UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENALDO COLBERT, JR.,

                    Plaintiff,                              Case No. 12-13844

                                                      Paul D. Borman
v.                                           United States District Judge

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, CAPITAL MORTGAGE
FUNDING, L.L.C., COUNTRY WIDE
MORTGAGE now owned by BANK OF
AMERICA, MERSCORP INC. f/k/a MERS,

                    Defendants.
_____/

OPINION AND ORDER
(1) GRANTING DEFENDANTS' BANK OF AMERICA, FANNIE MAE AND MERS'
MOTION TO DISMISS (ECF NO. 14);
(2) DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR DEFAULT
JUDGMENT (ECF NO. 11); and
(3) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S CLAIMS AGAINST DEFENDANT
CAPITAL MORTGAGE FUNDING, LLC

This matter is before the Court on Defendants Federal National Mortgage Association

("Fannie Mae"), Bank of America f/k/a Countrywide Home Loans ("Bank of America") and

Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss.  (ECF No. 14.)

Plaintiff filed a response (ECF No. 16) and Defendants filed a reply (ECF No. 17).  The Court held

a hearing on February 13, 2013.

For the reasons that follow the Court GRANTS Defendants' motion and DISMISSES

Defendants Fannie Mae, Bank of America and MERS with prejudice. The Court further DENIES

Plaintiff's motion for default judgment against Defendant Capital Mortgage Funding, LLC ("Capital

1

Mortgage") and DISMISSES Capital Mortgage WITHOUT PREJUDICE.

**INTRODUCTION**

In this mortgage foreclosure case, Plaintiff defaulted on his mortgage, his Property was subject to foreclosure by advertisement and sold at a Sheriff's sale on September 24, 2008. Plaintiff did not redeem the Property during the statutory redemption period and, after proceedings and a hearing in state district court, Plaintiff was ordered evicted from the Property on May 13, 2009. He filed this lawsuit on May 30, 2012, more than three years after the judgment of possession issued by the state district court, and seeks to have the Sheriff's sale set aside and to quiet title to the Property in his name. Defendants Fannie Mae, Bank of America and MERS move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff also moves for a default judgment against Defendant Capital Mortgage.

For the reasons that follow, the Court concludes that it lacks subject matter jurisdiction over several of Plaintiff's claims and that, in any event, the Complaint fails to state a claim on which relief can be granted. Accordingly, the Court GRANTS Defendants' motion to dismiss. The Court further DENIES Plaintiff's motion for default judgment and DISMISSES Defendant Capital Mortgage based upon Plaintiff's failure to effect proper service on Capital Mortgage.

**I.      BACKGROUND**

   **A.      The Mortgage Origination, Default, Foreclosure and Eviction**

On October 11, 2006, Plaintiff obtained a mortgage loan (the "First Note"), from Capital

Mortgage Funding, LLC ("Lender") in the principal sum of $96,000.[1] (ECF No. 14, Defs.' Mot. Ex. 1, Oct. 11, 2006 Note.) On October 11, 2006, Plaintiff also obtained a balloon Note (Balloon Note) from the Lender in the principal amount of $24,000. (Defs.' Mot. Ex. 2, Oct. 11, 2006 Balloon Note.) As security for the First Note, Plaintiff granted MERS, as nominee for Lender, a mortgage ("First Mortgage") on real property located at 25112 Schoolcraft, Redford, Michigan (the "Property"). (Defs.' Mot. Ex. 3, Oct. 11, 2006 Mortgage as security for $96,000 indebtedness.) The First Mortgage was recorded on October 24, 2006, with the Wayne County Register of Deeds. (*Id.*) As security for the Balloon Note, Plaintiff granted MERS, as nominee for Lender, a second mortgage ("Second Mortgage") on the Property. (Defs.' Mot. Ex. 4, Oct. 11, 2006 Mortgage as security for $24,000 indebtedness.) On June 19, 2007, MERS discharged Plaintiff's obligation under the Second Mortgage. (ECF No. 1 Pl.'s Compl. Ex. B, Certificate of Discharge, Registered June 19, 2007.)

There is no evidence that Plaintiff ever satisfied his obligation under the First Note and there is no evidence that the First Mortgage has never been discharged. Plaintiff defaulted on the First Mortgage and, as a result of the default, the Property was subject to foreclosure and was sold at auction on June 4, 2008. (Defs.' Mot. Ex. 5, June 4, 2008 Sheriff's Deed.) The June 4, 2008 sale of the Property was rescinded on June 27, 2008 when MERS discovered that the foreclosure sale had been inadvertently held. (Defs.' Mot. Ex. 6, June 25, 2008 Affidavit Expunging Sheriff's Deed

---

[1] On a motion to dismiss, the Court may consider matters of public record whose authenticity cannot be questioned, when such documents are incorporated by reference into or are central to the claims set forth in Plaintiff's Complaint, without converting the motion to one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

on Mortgage Sale Filed Pursuant to MCLA 565.451a.)

       After the first Sheriff's sale was rescinded, Plaintiff again fell into default. On August 27, 2008, Notice of Foreclosure was posted in the Detroit Legal News, identifying Plaintiff as the mortgagor, the Mortgage in Default as recorded at "Libor 45472 on Page 825," (the Libor and Page Number for the $96,000 First Mortgage) and identifying MERS as the mortgagee. (Defs.' Mot. Ex. 7, p. 3.)  The same Notice ran on September 10 and September 17, 2008 and was posted in a conspicuous place on the Property. (*Id.*) The Property was foreclosed upon again and sold at auction to MERS on September 24, 2008.  (Defs.' Mot. Ex. 7, September 24, 2008 Sheriff's Deed on Mortgage Sale.)  The redemption period on the Property expired on March 24, 2009.  (*Id*. at 4, 5.)

       After purchasing the Property at auction, MERS quit claimed the Property to Fannie Mae on September 25, 2008. (Defs.' Mot. Ex. 8, Quit Claim Deed.)  The Quit Claim Deed was registered with the Wayne County Register of Deeds on October 24, 2008.  (*Id.*)  Plaintiff did not redeem the Property within the six-month redemption period and on April 21, 2009, Fannie Mae filed an eviction proceeding in the State of Michigan, 17th District Court, Landlord Tenant Division, Case No. 0945967LT, which was served on Plaintiff on April 22, 2009.  (Defs.' Mot. Ex. 9, Judgment of Possession and Notice of Eviction; ECF No. 1, Pl.'s Compl. ¶¶ 14-15.)  A summary disposition hearing was held on May 13, 2009, at which Plaintiff appeared and was heard and permitted to submit documentary evidence, and Judgment was entered in favor of Fannie Mae, granting Fannie Mae possession and giving Plaintiff Notice of Eviction.  (Defs.' Mot. Ex. 9; Pl.'s Compl. ¶ 16.)  Plaintiff was given until May 26, 2009 to move from the Property or face eviction.  (Defs.' Mot. Ex. 9; Pl.'s Compl. ¶17.)  Plaintiff informed this Court at the hearing on this matter that he no longer resides at the Property and that the Property is currently occupied by others individual(s) with whom

Plaintiff is unacquainted.

**B.      Plaintiff's Claims Challenging the Debt, the Foreclosure Sale and Eviction**

On August 30, 2012, more than three years after the Judgment of Possession was rendered, Plaintiff filed the instant action. The heart of Plaintiff's claim appears to be his belief that the June 13, 2007 Discharge of the Second Note for $24,000 relieved him of his obligation on the First Note for $96,000, as well as the Second Note. (Pl.'s Compl. ¶¶ 19-20.) Plaintiff states that MERS has committed fraud by "stating that the Mortgage dated October 11, 2006 was discharged and then in the same breath selling Plaintiff's property . . . ." (Compl. ¶ 20.) Plaintiff provides no evidence to support this contention and the controlling documents establish unrebutted evidence to the contrary. While both Mortgages are dated October 11, 2006, they are clearly different instruments and bear different identifying information. The Certificate of Discharge identifies the mortgage with the MERS # 100030600315985 which corresponds to the MIN # 100030800600315985 on the $24,000 Second Mortgage. (Compare Pl.'s Ex. B with Defs.' Ex. 4.)

Plaintiff also alleges that Fannie Mae had no rights to foreclose on the Property because there are no recorded assignments from Capital Mortgage to Fannie Mae. Plaintiff claims that MERS (who quit claimed the Property to Fannie Mae) was not the Lender and never had a recorded interest in the Property. (Compl. ¶¶ 23-27.) Plaintiff does not deny that he granted a Mortgage to MERS as nominee for Capital Mortgage and signed the Mortgage document that stated that MERS was the mortgagee of the Property and acted as nominee for the Lender, Capital Mortgage. Plaintiff also claims that he was deprived of property in violation of the Fifth Amendment and seeks return of the "original wet ink signed note/contract." (Compl. ¶¶ 64-89.)

Plaintiff further alleges, in a perfunctory manner, that the Sheriff sale is void because the "foreclosing defendants" did not comply with "MCL Section 600.3204." (Compl. ¶ 54.) Plaintiff claims that MERS engaged in a "pattern and practice of defrauding Plaintiff in that two separate Sheriff Deeds were executed on the same property naming MERS as nominee for the lender" and that MERS failed to properly credit Plaintiff's payments on the Property when it knew that the mortgage had been discharged. (Compl. ¶¶ 98-102.) Plaintiff complains that "the record chain of title has been broken in violation of MCL 600.3204(1)(a)(b)(c)(3) because the fraudulent Sheriff's deeds did not establish ownership of the alleged indebtedness prior to the fraudulent sale of the Plaintiff's property, which was foreclosed by Federal National Mortgage Association via MERS and TROTT & TROTT who are all members of MERS." (ECF No. 16, Pl.'s Resp. 7.)

Finally, Plaintiff alleges (against Capital Mortgage Funding only) a claim for breach of contract for failure to give notice to Plaintiff of the transfer of the servicing rights on the Loan to Country Wide Home Loans. (Compl. ¶¶ 90-96.) Plaintiff ignores paragraph 20 of the Mortgage which expressly grants the right to change the loan servicer without giving notice to the borrower. (Defs.' Mot. Ex. 3, Mtg. ¶ 20.)

Plaintiff granted a Mortgage to MERS, solely as nominee for Capital Mortgage, which expressly granted MERS the right to foreclose on the Property and to transfer the Property. (Defs.' Mot. Ex. 3, First Mortgage at 2, ¶ (c).) The First Mortgage expressly provided, in a paragraph conspicuously set out on page three, directly above the line on which Plaintiff placed his initials, that:

> Borrower understands and agrees that MERS holds legal title to the interests granted by the Borrower in this Security Instrument, but, if necessary to comply with law or all of those interests, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not

6

limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(Defs.' Mot. Ex. 3, First Mortgage 3.)   As the mortgagee, MERS was expressly authorized to foreclose under section 600.3204(1)(d).   MERS clearly possessed a valid right to foreclose by advertisement on Plaintiff's mortgage.  *See Residential Funding Co. v. Saurman*, 490 Mich. 909 (2011) (confirming MERS' right, as a mortgagee of record, to foreclose by advertisement).

Plaintiff also agreed, in executing the First Mortgage agreement, to permit MERS to act as the mortgagee under the agreement and to: "mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors assigns) and to the successors and assigns of MERS, the [Property]." (*Id.*)   MERS also possessed the right to transfer the Property, which it did to Fannie Mae by Quit Claim Deed registered with the Wayne County Register of Deeds on October 24, 2008. (Defs.' Mot. Ex. 8, Quit Claim Deed.)

## II.      STANDARD OF REVIEW

### A.      Motion to Dismiss - Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Rule 12(b)(1), dismissal of an action is appropriate where a court does not enjoy subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attach the factual basis for jurisdiction, in which case the trial court must weigh the evidence." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citation omitted). Having invoked the jurisdiction of the federal courts, "the plaintiff bears the burden of proving that jurisdiction exists." *Id*. Thus, when evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

### B.    Motion to Dismiss - Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570.  The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

2:12-cv-13844-PDB-MJH   Doc # 19   Filed 04/16/13   Pg 9 of 27   Pg ID 587

> inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969). While a "*pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), still under even this lenient standard *pro se* plaintiffs must meet basic pleading requirements. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The leniency granted to *pro se* plaintiffs "does not require a court to conjure allegations on a litigant's behalf." *Id.* at 714 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written

9

instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the

pleadings.  *QQC, Inc. v. Hewlett-Packard Co*., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).

"Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by

failing to attach a dispositive document."  *Weiner v. Klais & Co., Inc*., 108 F.3d 86, 89 (6th Cir.

1997).

### C.    Motion for Default Judgment

Under Fed. R. Civ. P. 55(b), a judgment by default may be entered against a defendant who

has failed to plead or otherwise defend against an action.  In order for a Plaintiff to obtain a

judgment by default, he must first request a Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a).

*Hanner v. City of Dearborn Heights*, No. 07-15251, 2008 WL 2744860, at *1 (E.D. Mich. July 14,

2008) ("In order for a Plaintiff to obtain a judgment by default, he must first request a Clerk's entry

of default pursuant to Fed. R. Civ. P. 55(a).").  "When a defendant is in default, the well pleaded

factual allegations in the Complaint, except those relating to damages, are taken as true."  *Ford*

*Motor Co. v. Cross,* 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006).  If, accepting as true all of

Plaintiff's well-pleaded allegations, those allegations are sufficient to support a finding of liability,

a judgment in Plaintiff's favor shall enter.  While a default judgment establishes liability as to

plaintiff's well pleaded allegations, where damages are unliquidated, the amount of damages must

still be proven.  *Antoine v. Atlas Turner*, 66 F.3d 105, 110 (6th Cir. 1995).  "Where damages are

unliquidated a default admits only defendant's liability and the amount of damages must be proved."

*Id.*  "Ordinarily, the District Court must hold 'an evidentiary proceeding in which the defendant has

the opportunity to contest the amount [of damages].'"  *Id*. at 110-11 (quoting *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, 506 U.S.

1080, 113 S. Ct. 1049, 122 L.Ed.2d 357 (1993)).

### III.    ANALYSIS

#### A.    Plaintiff's Claims Relating to the Foreclosure and Eviction Proceedings (Counts I, II and III and VIII) are Barred by the *Rooker-Feldman* Doctrine, *Res Judicata* and/or Collateral Estoppel.

The *Rooker-Feldman* Doctrine derives its name from two United States Supreme Court cases interpreting 28 U.S.C. §1257(a), which vests review of state court judgments in the Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "[28 U.S.C. §1257(a)] is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Kovacic v. Cuyahoga County Dept of Children and Family Services*, 606 F.3d 301, 308 (6th Cir. 2010). Pursuant to the *Rooker-Feldman* doctrine, "lower courts lack subject matter jurisdiction to review the decisions of state courts." *Givens v. Homecomings Financial*, 278 F. App'x 607, 608-09 (6th Cir. 2008). *Rooker-Feldman* applies to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 609 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The *Rooker-Feldman* Doctrine does not apply, however, to claims that are independent of the state court's judgment. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (citing *Pittman v. Cuyahoga County Dep't of Children and Family Serv.*, 241 F. App'x. 285, 287 (6th Cir. 2007)). The Court must determine the "source of the injury." *Id.* (citing *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006)). If the source of the alleged injury is not the state court's decision, the claims are considered independent, and the *Rooker-Feldman* doctrine does not apply. *Id.* (citing

11

*McCormick*, 451 F.3d at 394-95).

In the claims of his Complaint relating to the foreclosure process and eviction proceedings and seeking return of the Property (Counts I, II and III), Plaintiff presents a classic case for application of the *Rooker-Feldman* doctrine. Each of these Counts of Plaintiff's Complaint directly attacks the validity of the foreclosure and/or the eviction. As relief on these Counts, Plaintiff asks the Court to order that the Sheriff's sale be set aside, that the Sheriff's deed be canceled, that title to the Property be quieted in Plaintiff's name and the Property returned to Plaintiff. (Compl. 27.) Granting this relief would require the Court to reverse the state court's judgment granting possession of the Property to Fannie Mae. "Because the point of this suit is to obtain a federal reversal of a state court decision, dismissal on the grounds of *Rooker-Feldman* [is] appropriate." *Givens*, 278 F. App'x at 609 (citing *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 489-90 (6th Cir. 2005)). *See also Battah v. ResMAE Mtg.* Corp., 746 F. Supp. 2d 869, 873-74 (E.D. Mich. 2010) (finding that plaintiff's claims alleging violations of Michigan's foreclosure statute, seeking declaratory relief and seeking to quiet title "all challenge the validity of the foreclosure and sheriff's sale and are thus inextricably intertwined with the 48th District Court's decision and subject to *Rooker-Feldman*").

Similarly here, to sustain Plaintiff's claims challenging the Sheriff's sale and eviction proceeding that granted possession of the Property to Fannie Mae would require this Court to decide that the Seventeenth District Court made the wrong decision in upholding the foreclosure proceedings and ordering that possession be awarded to Defendant Fannie Mae. Plaintiff does not state an alleged wrong in these claims that is independent of the wrong he alleges he suffered as a result of the state court judgment - he asks this Court to reverse the judgment of possession and to

12

quiet title in his name, clearly challenging the validity of the state court judgment itself.  Counts I, II and III of the Complaint are dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

Additionally, Counts I, II, and III, as well as Count VIII (Fraud), are barred by the doctrines of *res judicata* and/or collateral estoppel.  "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."  *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738).  Michigan employs a "broad view of *res judicata*."  *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *In re MCI Telecommunications Complaint*, 460 Mich. 396, 431 (1999)).  In Michigan, *res judicata* bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.  *Abbot*, 474 F.3d at 331(citing *Adair v. State*, 470 Mich. 105, 121 (2004)).  *Res Judicata* generally bars not only claims already litigated, but claims arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.  *Dart v. Dart*, 460 Mich. 573, 586 (1999).  "'Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time*, *space*, *origin or motivation*, [and] whether they form a convenient trial unit.'"  *Buck*, 597 F.3d at 817 (quoting *Adair*, 470 Mich. at 125) (noting emphasis and alteration in original).  *See Sewell v. Clean Cut Management*, 463 Mich. 569, 574 (2001) (holding that a state district court judgment issued in a summary possession proceeding is conclusive on the issue of whether the eviction was proper); *Givens*,  278 F. App'x at *2 (upholding district court's dismissal of plaintiff's complaint which sought to effectively appeal the state court order granting possession to JP Morgan, finding

13

plaintiff's claims barred by the doctrine of *res judicata* because they could have been resolved in the state court proceeding).

However, under Michigan law, in the context of summary eviction proceedings, only issues that are actually litigated in the summary proceedings are precluded from being raised in subsequent litigation. In *J.A.M. Corp. v. AARO Disposal, Inc.*, 461 Mich. 161 (1999), the Michigan Supreme Court held that the summary nature of such proceedings take them "outside the realm of normal rules concerning merger and bar in order that attorneys would not be obliged to fasten all other pending claims to the swiftly moving summary proceedings." *Id*. at 169. Subsequently, in *Sewell, supra*, the Michigan Supreme Court clarified that the rule set forth in *J.A.M.* does not permit a claim that was actually litigated in the summary proceeding to be relitigated. 463 Mich. at 576-77.

At the hearing on this matter, the Court inquired of Plaintiff whether he had appeared and argued to the state district court at the eviction proceedings the arguments he makes in this Court:

> The Court:     Were you at the Redford District Court, the 17th District Court at the
> time of these proceedings?
>
> Plaintiff:     Yes. I went to the Redford District Court and Karen Khalil was the
> judge. I turned in the paperwork to Karen Khalil. I wanted her to
> help me dispute the validity of the foreclosure. The only thing she did
> was ask me how many days I needed, and that was it. They, they
> kicked me out.
>
> The Court:     Did you appeal that to the Wayne County Circuit Court?
>
> Plaintiff:     No.

Transcript of February 13, 2013 Hearing, 12-13. Accordingly, *res judicata* bars the claims asserted in this action that relate to the foreclosure and eviction proceedings in state court.

To the extent that Plaintiff's claims relating to the foreclosure and eviction (Counts I, II, III and VIII) are not barred by *Rooker-Feldman* or *res judicata*, they are barred in this case by the

14

related doctrine of collateral estoppel. "Whereas *res judicata* precludes litigation of previously adjudicated *claims*, collateral estoppel precludes relitigation of *issues or facts* that have already been decided in a prior litigation." *Lund v. Citibank (West) FSB*, No. 07-10686, 2007 WL 3408468, at *2 (E.D. Mich. Nov. 17, 2007) (citing *Wilcox v. Sealy*, 132 Mich. App. 38, 46 (1984)) (emphasis in original). "'Where issues of fact or law have been finally determined by a court of competent jurisdiction in one legal action which are essential to the maintenance of another legal action, it is universally held that the second action must fail.'" *Id.* (quoting *Jones v. Chambers*, 353 Mich. App. 674, 680 (1958)). When collateral estoppel is being used defensively, as it is here, mutuality of estoppel is not required. *Id.* (citing *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 691 (2004)).

The heart of Plaintiff's Plaintiff's fraud claim appears to be his belief that the June 13, 2007 Discharge of the Second Note for $24,000 relieved him of his obligation on the First Note for $96,000, as well as the Second Note. (Pl.'s Compl. ¶¶ 19-20.) However, this issue was clearly decided against Plaintiff in the proceedings in the state district court and Plaintiff is precluded from relitigating this issue. Plaintiff explained to this Court at the hearing on this matter that he provided Judge Khalil with paperwork establishing his claim that his mortgage had been discharged and that he did not believe he owed a debt to Defendant Bank of America (then Countrywide). In awarding possession of the Property to Fannie Mae, Judge Khalil necessarily rejected Plaintiff's arguments and concluded that the debt had not been discharged and that Plaintiff was obligated on the Note and Mortgage. (Feb. 13, 2013 Hr'g Tr. 11-12.) Plaintiff is precluded from relitigating this issue in this Court.

Importantly, in his response to Defendants' *res judicata* and collateral estoppel arguments, Plaintiff does not argue that he did not litigate these same claims and issues in the Redford District

15

Court.  In fact, he acknowledges that the did make these arguments and that the 17th District Court ignored controlling principles of law when it granted possession to MERS.  (ECF No. 16, Pl.'s Resp. 6-7.)  Plaintiff did litigate these issues, he presented his arguments in writing to the state District Court, and Judge Khalil ruled against him.  Plaintiff did not appeal the state court decision and now seeks to have this Court reverse the judgment that Judge Khalil entered over three years ago.  Accordingly, Counts I, II, III and VIII are barred by *Rooker-Feldman*, *res judicata* and or the doctrine of collateral estoppel.

> **B.**    **Even Assuming Counts I, II, III and VIII Were Not Barred by *Rooker-Feldman* and or Preclusion Principles, Those Counts Also Fail to State a Claim on Which Relief Can be Granted.**

The foreclosure sale of Plaintiff's home to MERS occurred on September 24, 2008.  (Def.'s Mot. Ex. 7.)  As explained in the Sheriff's Deed, Plaintiff's right to redeem the property under Michigan law, therefore, expired on November March 24, 2009.  (*Id.* at 4, 5; Mich. Comp. Laws § 600.3204(8)).  Plaintiff did nothing to redeem the Property during the redemption period and lost possession of the Property in the state court summary eviction proceedings.  On August 30, 2012, more than three years past the expiration of the redemption period, after the completed foreclosure sale and eviction, Plaintiff commenced this action.  When the redemption period expired on March 24, 2011, MERS became vested with all right, title and interest in the property and, absent  a clear showing of fraud or irregularity in the foreclosure proceedings, Plaintiff cannot challenge that MERS' had full right, title and interest in the property.

The Sixth Circuit recently confirmed that Michigan law requires a strong showing of fraud or irregularity to set aside a completed foreclosure sale once the redemption period has expired and that defects under the Michigan foreclosure statute are actionable only on a showing of prejudice.

16

*Conlin v. MERS*, __F.3d__, 2013 WL 1442263 (6th Cir. 2013).  This high burden of proof, recognized by the Sixth Circuit in *Conlin*, that is required to set aside a completed foreclosure following expiration of the redemption period, has strong roots in Michigan law.  Michigan courts have long held that a plaintiff is barred from challenging a foreclosure sale after the right to redemption has passed.  *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187 (1942) (holding that "plaintiffs did not avail themselves of their right to redemption in the foreclosure proceedings and at the expiration of such right . . . all plaintiffs' rights in and title to the property were extinguished.")  Several Michigan state and federal courts have applied *Piotrowski* to bar claims by former property owners on their foreclosed properties after the period of redemption has passed, some concluding that plaintiffs lack Article III standing after the redemption period has expired and others concluding that while plaintiffs have standing to bring the claims, their claims fail on the merits.[2]  In *Conlin*, *supra*, the Sixth Circuit noted the standing/merits controversy but did not take the opportunity to finally resolve the issue.  *Conlin*, __F.3d__, 2013 WL 1442263, at *3 ("Whether the failure to make [a showing of fraud or irregularity] is best classified as a standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period.")

---

[2] The Sixth Circuit has weighed in on the standing/merits controversy only in unpublished opinions. *Houston v. U.S. Bank Home Mtg. Wisconsin Servicing*, No. 11-2444, 2012 WL 5869918, at * 4 (6th Cir. Nov. 20, 2012) (Noting that "district courts have split over whether the plaintiff in *Overton* lacked standing . . . or whether instead the plaintiff lost his claim on the merits," and concluding that *Overton's* holding does not turn on standing doctrine, because such an interpretation appears to be in conflict with Michigan law); *El-Seblani v. IndyMac Mtg. Servs.*, No. 12-1046, 2013 WL 69226, at * (6th Cir. Jan. 7, 2013) ("We find, in line with a recent unpublished decision by this court, that these holdings "do[ ] not turn on standing doctrine.  It is more accurate to say that the "fraud or irregularity" claims in *Overton*, *Awad*, and *Mission of Love* lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale") (citing *Houston*, *supra*).

(Footnotes and citations omitted.)

As noted by the Sixth Circuit in *Conlin*, the only possible exception to the rule that such claims are absolutely barred post-redemption applies when the mortgagor makes a strong showing of "fraud or irregularity." "'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.'" *Sweet Air Inv. Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) (quoting *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997), citing *Detroit Trust Co. v. Aggozinio*, 280 Mich. 402, 405-06 (1937)); *Schulthies v. Barron*, 16 Mich. App. 246, 247-48 (1969) ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity."); *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 643 (Mich. 1993) (same).

Importantly, the Sixth Circuit in *Conlin* took the opportunity to reaffirm that under Michigan law, the showing of fraud or irregularity required to set aside a completed foreclosure sale after the expiration of the redemption period must satisfy a very "high standard" of proof:

> Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. *See Mills v. Jirasek*, 255 N.W. 402, 404 (Mich. 1934) (citing *Reading v. Waterman*, 8 N.W. 691, 692 (Mich. 1881)); *see also Gordon Grossman Bldg. Co. v. Elliott*, 171 N.W.2d 441, 445 (Mich. 1969). To effectuate this interest in finality, the ability for a court to set aside a sheriff's sale has been drastically circumscribed. *See Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969); *see also Senters [v. Ottawa Sav. Bank, FSB]*, 503 N.W.2d [639] at 643 [(Mich. 1993)]. Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made "a clear showing of fraud, or irregularity." *Schulthies*, 167 N.W.2d at 785; *see also Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a

18

foreclosure sale aside." (internal quotation marks omitted)).

__F.3d__, 2013 WL 1442263, at *3.

Not only must there be an extraordinarily strong showing of fraud or irregularity but the alleged fraud must relate to the actual foreclosure process. *Conlin*, __F.3d__, 2013 WL 1442263, at *3 ("It is further clear that not just any type of fraud will suffice. Rather, the misconduct must relate to the foreclosure procedure itself.") (quotation marks, citation and alteration omitted); *Houston*, 2012 WL 5869918, at *5 (holding that "there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by defendant").

Plaintiff does not allege any such procedural irregularities in the instant case. Nor does Plaintiff's Complaint or his response to Defendant's motion, even construing his pleadings liberally based upon his *pro se* status, state a claim of fraud. A claim of fraud under Michigan law requires the following elements: (1) that the defendant made a misrepresentation; (2) that it was false; (3) that defendant knew at the time of making the statement that it was false or was reckless with regard to knowledge of the truth; (4) that defendant made it with the intention that plaintiff would rely on it; (5) that plaintiff did rely and act on the misrepresentation; and (6) that plaintiff suffered injury as a result. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330 (1976). The failure to allege and establish each element independently defeats a claim of fraud. *Id*.

No such allegations can fairly be gleaned from Plaintiff's Complaint. Plaintiff makes bare assertions of fraudulent conduct, but fails to support his claim with any factual matter that would suggest even the outlines of a claim of fraud, let alone satisfy the heightened pleading requirements for fraud under Fed. R. Civ. P. 9(b). Just invoking the word "fraud" doesn't make it so. Indeed, the principal alleged fraud about which Plaintiff complains is based on a factual assertion that is directly

19

contradicted by the contract between the parties, *i.e.* Plaintiff provides no evidence that he ever obtained a discharge of the First Mortgage for $96,000 (as opposed to the Second Mortgage for $24,000). The Certificate of Discharge on which Plaintiff relies to support his contention that he was misled into believing that he was free of his obligation on the First Mortgage clearly pertains only to the Second Mortgage, bearing that mortgage's identifying numbers.

To satisfy the particularity requirements of Rule 9(b), a plaintiff, at minimum, must "allege the time, place, and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). The bar for pleading fraud to set aside a foreclosure sale is extremely high. *See Snell v. Wells Fargo Bank*, No. 11-12018, 2012 WL 1048576, at *5 (E.D. Mich. March 28, 2012) (finding that bare assertions that plaintiffs had been "fraudulently misled" by defendants into believing that defendant would attempt to determine whether plaintiffs qualified for a loan modification, were inadequate to toll the expiration of the redemption period); *Kubicki v. Mortgage Electronic Registration Systems*, 292 Mich. App. 287, 293 (2011) (holding that plaintiff "failed to show the requisite 'strong case of fraud or irregularity, or some peculiar exigency, to overturn the foreclosure sale'") (quoting *Sweet Air*, *supra*, 275 Mich. App. at 497). Plaintiff does not allege the elements of a claim of fraud and certainly does not identify any alleged fraud that relates specifically to the foreclosure proceedings with sufficient particularity to support his attempt to set aside the foreclosure sale.

There is no question that all right, title and interest in Plaintiff's property vested in MERS on March 24, 2008, the last day to redeem the property. The only possible argument available to Plaintiff to challenge MERS' title to the property is a clear showing of fraud or procedural irregularity in the foreclosure process. *Conlin*, *Piotrowski*, *Schulthies*, *supra*. Plaintiff alludes to

MERS' failure to consider his loan modification before instituting the first foreclosure proceedings, but MERS rectified this failing by voiding the first Sheriff's sale and granting Plaintiff a loan modification, on which Plaintiff subsequently defaulted.   Additionally, breach of the loan modification statute does not prevent foreclosure.  It only entitles Plaintiff to convert the foreclosure by advertisement to a judicial foreclosure.  *See* Mich. Comp. Laws § 600.3205c(6).

Additionally, the Michigan Supreme Court, in *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98 (2012), recently clarified that a defect in the Michigan statutory foreclosure proceedings renders the foreclosure sale voidable, not void *ab initio,* and that such defects are actionable only upon a showing of prejudice, i.e. a showing that the mortgagor would have been in a better position had the defect not occurred.  A foreclosure that fails to comport with Michigan statutory foreclosure laws will be voidable only if plaintiffs demonstrate that "they were prejudiced by defendant's failure to comply with MCL 600.3204."  *Id.* at 115.   "To demonstrate such prejudice, they must show they would have been in a better position to preserve their interests in the property absent defendant's noncompliance with the statute."  *Id.* at 116.  *See Conlin*, __F.3d__, 2013 WL 1442263, at *4 (recognizing that *Kim* made clear that failures to comply with Michigan's foreclosure by advertisement statute render foreclosures voidable, not void *ab initio*, and noting that after *Kim*, such failures are actionable only upon a showing of prejudice).

For the reasons discussed above, none of Plaintiff's claims relating to his mortgage and the foreclosure proceedings is viable and therefore none can serve as a basis to demonstrate that Plaintiff would have been in a better position absent the alleged wrongful conduct of the Defendants related to the mortgage foreclosure process.  *See Bernard v. Federal Nat'l Mtg. Ass'n*, No. 12-14680, 2013 WL 1282016, at *6 (E.D. Mich. March 27, 2013) ("Applying *Kim*, plaintiff cannot establish the

prejudice required to set aside the foreclosure sale . . . because none of plaintiff's claims relating to her mortgage and the foreclosure proceedings are viable . . . .).  Plaintiff fails to state a plausible claim for relief and therefore his claims cannot serve as a basis to demonstrate that Plaintiff would have been in a better position absent the alleged defects.  Plaintiff has not pled, let alone adduced evidence to support, facts that would entitle him to render the foreclosure sale voidable and demonstrate prejudice.  Plaintiff does not maintain that he was unaware that a foreclosure sale of his home was going to occur or that he was misled into believing that one might not occur and, there is no evidence that he made any effort to convert the summary proceedings to a judicial foreclosure or to redeem the property after the foreclosure sale, but prior to expiration of the redemption period. *See Kim*, 493 Mich. at 121 (Markman, J. concurring) (suggesting that these should be among the considerations in deciding the issue of prejudice).  Plaintiff has failed to make a showing of fraud or irregularity and has failed to demonstrate that he would have been in a better position to preserve his interest in the Property absent Defendants' allegedly wrongful behavior.  Even were this Court to conclude Plaintiff's claims were not barred by *Rooker-Feldman*, *res judicata* or collateral estoppel, Plaintiff cannot mount this untimely challenge to the foreclosure proceedings or the sale of the property, regardless of how he characterizes his claim.[3]

_____

[3]  This case presents a particularly egregious effort to set aside the foreclosure sale and regain possession of the Property given that Plaintiff waited three years to institute this action and innocent third parties presently occupy the premises.  "[B]ecause the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought promptly and without delay." *El-Seblani*, 2013 WL 69226, at *3.  Also, to the extent Plaintiff seeks equitable relief, his claims are barred by the doctrine of unclean hands.  There is no question that Plaintiff received $96,000 in exchange for the note and mortgage, failed to pay the debt and now seeks to have the Property returned and his debt forgiven.  The doors to equity are closed on these facts. *See Yuille v. American Home Mtg. Servs*., *Inc*., 483 F. App'x 132, 135 (6th Cir. 2012) (finding that the district court properly applied the unclean hands doctrine to plaintiff's quiet title claim where plaintiff received $3.6 million in exchange for the note and mortgage, failed to pay the

**C.      Counts IV (Demand for an Accounting) and V (Deprivation of Property in Violation of the Fifth Amendment) are Dismissed for Failure to State a Claim on Which Relief Can be Granted.**

Plaintiff fails to respond to Defendants' argument that Plaintiff has no right to request the equitable remedy of an accounting because the sums due can be determined by contractual terms or through discovery. Because the sums due under a mortgage and note can be determined by the parties' contractual agreement, an accounting is unavailable:

> The law is clear that an 'accounting may not be had where the action is for a specific sum due under a contract.' *Brown v. Brodsky*, 348 Mich. 16, 81 N.W.2d 363, 366 (1957). Furthermore, '[a]n accounting is unnecessary where discovery is sufficient to determine the amounts at issue.' *Cyril J. Burke, Inc. v. Eddy & Co., Inc*., 332 Mich. 300, 51 N.W.2d 238, 239 (1952). Here, the Plaintiff's claims are based entirely on the amount due under the mortgage note which, in essence, is a contract between the parties. In addition, the Plaintiff's complaint does not support an inference that the transaction at issue is so complex that ordinary discovery procedures would be inadequate to discern the amount in controversy. Without a showing of the necessity of invoking the equitable jurisdiction of the Court to order an accounting, this claim must be dismissed.

*Barkho v. Homecomings Fin.*, *LLC*, 657 F. Supp. 2d 857, 865 (E.D. Mich. 2009).

Moreover, Plaintiff does not respond to Defendant's argument that Article 3 of the Uniform Commercial Code ("UCC") does not apply to a mortgage for real property because a mortgage instrument is not a negotiable instrument.  *See Schare v. MERS*, No. 11-11889, 2012 WL 2031958, at *2 (E.D. Mich. June 6, 2012) (holding that "'Article 3 of the UCC does not apply to mortgages because Article 3 applies only to negotiable instruments and a mortgage instrument is not a negotiable instrument since it does not contain an unconditional promise to pay a sum certain [but]

---

debt and then sought judicial intervention to avoid paying the debt).  *See also Rautu v. U.S. Bank, N.A.*, No. 12-12961, 2013 WL 866480, at *4 (E.D. Mich. March 7, 2013) (finding that "Plaintiff's failure to honor the terms of the mortgage agreement bars him from asserting a quiet-title action") (citing *Yuille*, *supra*).

2:12-cv-13844-PDB-MJH   Doc # 19   Filed 04/16/13   Pg 24 of 27   Pg ID 602

merely secures payment of the negotiable instrument'") (quoting *Jaboro v. Wells Fargo Bank, N.A.*, No. No. 10-11686, 2010 WL 5296939, at *6 (E.D. Mich. Dec. 20, 2010)). Plaintiff fails to state a claim for the equitable relief of an accounting. Accordingly, Count IV is dismissed.

Plaintiff's Fifth Amendment due process claim also fails as a matter of law because none of the Defendants in this action is a state actor whose conduct is subject to the Due Process clause. This Court agrees with the reasoning of other courts in this District concluding that Fannie Mae is not a state actor. *See Fannie Mae v. Mandry*, No. 12-13236, 2013 WL 687056, at *4 (E.D. Mich. Feb. 26, 2013) (following the rationale and result of federal courts addressing the matter and holding that Fannie Mae and Freddie Mac are not governmental actors post-conservatorship and dismissing Fifth Amendment due process claim); *Rubin v. Fannie Mae*, No. 12-12832, 2012 WL 6000572, at *2-3 (E.D. Mich. Nov. 30, 2012) (finding no merit in plaintiff's due process claim because Fannie Mae is not a government actor); *Kapla v. Fed. Nat'l Mtg. Assoc.*, Adv. Pro. No. 12-04000-PJS, 2012 WL 6569739, at *16 (E.D. Mich. Bankr. Dec. 14, 2012) (finding that Fannie Mae, even after the appointment of the Federal Housing Financing Agency as conservator, is not a government actor whose conduct is subject to constitutional challenge). The Court concludes that Plaintiff's Fifth Amendment Due Process claim fails to plead the requisite state action and therefore fails to state a claim on which relief can be granted. Accordingly, Count V is dismissed.

### D.    Count VI (Return of Original Wet Ink Signed Note/Contract) Fails to State a Claim on Which Relief Can be Granted

Plaintiff fails to provide any legal support for his claim that he is entitled to receive the "wet ink" mortgage or original Note. Indeed, the law in Michigan is to the contrary. *See Aliahmad v. U.S. Bank Nat. Ass'n*, No. 12-11844, 2012 WL 3639282, at *5 (E.D. Mich. Aug. 24, 2012) (holding that "there is no statutory requirement that the original note or the so-called "wet-ink" mortgage be

24

presented"); *Jozlin v. U.S. Bank Nat. Ass'n*, No. 11-12749, 2012 WL 12760, at *3 (E.D. Mich. Jan. 4, 2012) ("Inasmuch as [Michigan's foreclosure by advertisement] statute does not require presentation of the original note or a "wet ink" mortgage, this allegation by the Jozlins fails to state a claim upon which relief can be granted.").   Indeed, Plaintiff's responsive brief completely fails to address Defendant's argument for dismissal of this Count.  *See Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 790 n. 2 (E.D. Mich. 2010) (finding that where plaintiff fails to respond to an argument presented in a motion to dismiss, the court presumes the point is conceded and the argument abandoned).

Accordingly, Plaintiff's claim seeking return of the "wet ink" mortgage fails to state a claim upon which relief can be granted and Count VI of the Complaint is dismissed.

### E.   Plaintiff Has Failed to Effect Proper Service of Process on Defendant Capital Mortgage and Count VII (against Capital Mortgage only) is Dismissed Without Prejudice.

Plaintiff has secured a Clerk's Entry of Default against Defendant Capital Mortgage and moves this Court to enter a default judgment against Capital.  (ECF No. 11, Motion for Default Judgment.)  However, it is clear that Capital Mortgage has never been properly served, as Plaintiff himself effected service on Capital Mortgage by personally mailing the Summons and Complaint return receipt requested.  (ECF No. 5, Return of Service on Capital Mortgage.)  Federal Rule of Civil Procedure 4(c) permits service by mail only by a *non-party* adult.  *See, e.g. Constien v. United States*, 628 F.3d 1207, 1215 (10th Cir. 2010) (recognizing that mailing under rule 4(c) must be by someone not a party to the action); *Martinez v. United States*, No. 11-830, 2012 WL 1893644, at *1 (W.D. Oklahoma April 26, 2012) (holding service by mail by plaintiff improper because "parties are not allowed to effect service of process").

25

Because service on Capital Mortgage was improper, this Court cannot exercise personal jurisdiction over Defendant Capital Mortgage absent waiver or consent. *See King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) ("without proper service of process, consent, waiver or forfeiture, a court may not exercise personal jurisdiction over a named defendant"). "[T]here must be effective service of process on a defendant before an entry of default can be made. Without proper service of process, the district court is without jurisdiction to make an entry of default against a defendant pursuant to Rule 55(a) as requested by the plaintiffs." *Sandoval v. Bluegrass Regional Mental Health-Mental Retardation Board*, 229 F.3d 1153, 2000 WL 1257040, at *5 (6th Cir. 2000) (Table Case) (citing 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2682).

At the hearing on this matter, the Court explained to Plaintiff that Defendant Capital Mortgage had not been properly served and that in order for the Court to consider Plaintiff's motion for default judgment, Plaintiff must properly serve Capital Mortgage and file proof of such service with the Court. The Court explained to Plaintiff that service must be made by an independent third party, not by Plaintiff himself. (Feb. 13, 2013 Hr'g Tr. 14-15.) The Court instructed Plaintiff to read the court rules, check with the Clerk's Office and effect proper service on Capital Mortgage. In response to the Court's direction, Plaintiff resubmitted his Motion for Default Judgment without indicating proper service on Defendant Capital Mortgage. (ECF No. 18.)

The Court is without jurisdiction over Defendant Capital Mortgage who has never been properly served in this case and therefore DENIES Plaintiff's motion for default judgment. Despite the Court's instruction to Plaintiff at the hearing on this matter regarding the improper service on Capital Mortgage, Plaintiff has failed to properly serve Defendant Capital Mortgage. Because 120 days have passed since the filing of the Complaint, the Court *sua sponte* dismisses Defendant

26

Capital Mortgage without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

## IV.      CONCLUSION

Because the Court lacks subject matter jurisdiction over certain of Plaintiff's claims, and because even if subject matter jurisdiction were established, Plaintiff has failed to state a claim upon which relief may be granted, the Court GRANTS Defendants' Bank of America, MERS and Fannie Mae's Motion to Dismiss (ECF No. 14). Further, the Court DENIES Plaintiff's Motion for Default Judgment Against Capital Mortgage (ECF No. 11) and DISMISSES Defendant Capital Mortgage WITHOUT PREJUDICE.

IT IS SO ORDERED.


S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 16, 2013

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 16, 2013.


S/Denise Goodine
Case Manager

27